UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

First-Citizens Bank & Trust Company
of North Carolina,

    Plaintiff,

Arvest Bank,

    Intervenor-Plaintiff,

v.              **ORDER**
                Civil No. 12-1734 ADM/FLN

Outsource Services Management,
d/b/a Presidium Asset Solutions,

    Defendant.

_____

John C. Ekman, Esq., and Daniel N. Sacco, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, on behalf of Plaintiff.

Jerome A. Miranowski, Esq., and Michael M. Krauss, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendant.

Paul L. Ratelle, Esq., Fabyanske Westra Hart & Thomson, PA, Minneapolis, MN, on behalf of Plaintiff-Intervenor Arvest Bank.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Defendant Outsource Services Management's ("OSM") Expedited Motion for a Stay Pending Appeal [Docket No. 23] and Supplemental Brief to Require Bond Before Preliminary Injunction Becomes Effective [Docket No. 27]. By Order dated July 27, 2012 [Docket No. 22] (the "Order"), Plaintiff First-Citizens Bank & Trust Company of North Carolina's ("First-Citizens") Motion for Temporary Restraining Order [Docket No. 3] was granted and a preliminary injunction against OSM was issued. OSM now moves to stay the Order and requests a bond from First-Citizens as the security required by Rule 65(c) of the Federal Rules of Civil

Procedure.

## II.  DISCUSSION

**A.  Motion for a Stay Pending Appeal**

The factual background of this matter is recited in the Court's prior Order and is incorporated here by reference.  OSM avers it will appeal that Order and asks the Court for a stay pending that appeal.  The factors to consider in determining whether to stay an injunction pending an appeal are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Brauskill, 481 U.S. 770, 776 (1987) (citations omitted).  These factors are substantially similar to those used in issuing preliminary injunctive relief in the first instance: (1) threat of irreparable harm to the movant; (2) harm to other parties if the relief is granted; (3) probability of movant's success on the merits; and (4) effect on public interest.  Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).  The Court has already weighted the equities in this case and they favor preliminary relief.

The equities weigh in favor of a preliminary injunction because the equities favor the status quo.  OSM appears to suggest a stay, rather than an injunction, will maintain the status quo.  Mem. of Law in Supp. of OSM's Expedited Mot. for a Stay Pending Appeal [Docket No. 25] 2 (citing Protect Our Water v. Flowers, 377 F. Supp. 2d 882, 882 (E.D. Cal. 2004)).  The status quo is the last uncontested status preceding the pending controversy.  Lieving v. Cutter Assocs., Inc., 2010 WL 428800, at *4 n.1 (D. Minn. Feb. 1, 2010) (citing Aoude v. Mobil Oil Corp., 862 F.2d 890, 893 (1st Cir. 1988)).  This controversy arose from the voting approval of the proposed Agreement Regarding Loan.  Prior to the vote regarding that proposal, the status

was that the loan at issue was approaching default with no valid work out agreement in place. The injunction preserves that status quo. OSM avers the participant banks will be irreparably harmed by the injunction. OSM avers each participant bank will be obliged to reclassify the loan, evaluate write-offs, and increase their loan loss reserves. However, First-Citizens previously argued that any default, including giving rise to a forbearance agreement, would lead to the same results. OSM fails to identify how the participant banks will suffer a new harm in this regard distinct from what they would suffer if the proposed Agreement Regarding Loan or some less controversial forbearance agreement were negotiated. Unanimous consent is not needed for a forbearance agreement that does not extend the maturity date of the loan or re-schedule payments. Decl. of Michael Meyer in Supp. of Mot. for Temporary Restraining Order [Docket No. 6] Ex. B § 3.5(c). OSM can even take certain action unilaterally. Id. § 3.1(a). Therefore, it is not speculative to believe that some agreement could be reached that would mitigate harms of delaying an ultimate decision regarding the loan while the rights of the parties are determined.

Finally, OSM argues it could not create a sufficient evidentiary record prior to the issuance of a preliminary injunction rather than a temporary restraining order. However, OSM never requested further briefing or an evidentiary hearing on this matter. The motion was fully briefed by both sides, and the Court allowed lengthy oral argument. In fact, rather than asking for additional time to submit further evidence, at the conclusion of oral argument OSM's counsel stressed the need for a speedy ruling.

**B.  Bond Requirement**

With respect to OSM's Supplemental Brief to Require Bond Before Preliminary Injunction Becomes Effective, the parties did not raise the issue of a bond during the initial

proceedings.  However, Rule 65(c) does require that the "court may issue a preliminary injunction or temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c) (emphasis added).

OSM avers the damages of being wrongfully enjoined will be the loss of the benefits of the proposed Agreement Regarding Loan.  Specifically, OSM cites the loss of the proposed $12 million August 1, 2012 payment (approximately $1.4 million of which would be distributed to First-Citizens), loss of the guaranty of the Confederated Tribes, loss of the increased interest rate, loss of quarterly payments of principal, loss of new financial covenants, and loss of the proposed shortened amortization period.  To compensate these losses, OSM requests a bond between $12 million and $53.67 million.  If OSM has been wrongfully enjoined, the future damages are uncertain.  If OSM ultimately prevails after only a few months of litigation, and then enters into an agreement with nearly identical terms to Agreement Regarding Loan, OSM and the participant banks have only lost the time-value of payment under the proposed agreement.  If, on the other hand, the borrower reneges on the agreement (and would not have done so anyhow), the benefit of the entire agreement would be lost.  There has been no reason proffered that the latter possibility is greater than the former.  These vagaries render a precise figure difficult to determine.  Nonetheless, an appropriate bond in these circumstances is $10,600,000.00 (the approximate amount the participant banks other than First-Citizens would have received on August 1 but for the injunction).

Having determined the amount of the bond, the Court now turns to an issue implicit in OSM's request.  OSM appears to take the position that the Order is not effective until the bond is actually posted.  Indeed, the law in some jurisdictions holds that the posting of a bond is a

condition precedent to the issuance of a preliminary injunction.  See Atomic Oil Co. of Okla. v. Bardahl Oil Co., 419 F.2d 1097, 1100 (10th Cir. 1969) ("Rule 65(c) states in mandatory language that the giving of security is an absolute condition precedent to the issuance of a preliminary injunction."); United States v. Associated Air Transp., Inc., 256 F.2d 857, 861 (5th Cir. 1958) ("[U]ntil the bonds were filed, the order by its own terms was conditional and without operative effect . . . .").  However, other jurisdictions are not so stringent, allowing injunctions to be effective so long as the issue of requiring a bond is eventually considered.  See IDG USA, LLC v. Schupp, 416 Fed App'x 86, 89 (2d Cir. 2011) ("[W]e reject [Defendant's] argument that the district court's preliminary injunction is somehow invalid because the court failed to require [Plaintiff] to post a bond until after [Defendant] specifically requested one almost a month after the preliminary injunction first issued."); Aoude, 862 F.2d at 896 ("[P]osting of a bond is not a jurisdictional prerequisite to the validity of a preliminary injunction . . . .").

   This Court's binding appellate body, the U.S. Court of Appeals for the Eighth Circuit has not weighed in on the issue.  Rather, Eighth Circuit precedent only requires that the issue be considered.  See Rathmann Grp. v. Tanenbaum, 889 F.2d 787, 789 (8th Cir. 1989) (holding it is an abuse of discretion for trial court not to consider question of bond securing preliminary injunction).  Under the circumstances here, the Court will adopt what it deems the wiser rule and hold the injunction is effective notwithstanding the failure to set a bond in the Order granting injunctive relief.  Given the equitable nature of injunctions, the temporary relief at issue, and the necessarily fast pace of these proceedings, strict adherence would be unjust when neither party previously raised the issue, none has expressed doubts as to the ability of First-Citizens to procure the bond, and damages secured by the bond, if any, would not be awarded until well after the bond would be posted.  Therefore, First-Citizens is required to post a bond in the

amount of $10,600,00.00 no later than 5:00 pm, central daylight time, on Friday, August 3, 2012.

### III.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Expedited Motion for a Stay Pending Appeal [Docket No. 23] is **DENIED**;

2. First-Citizens shall post a bond in the amount of $10,600,00.00 no later than 5:00 pm, central daylight time, on Friday, August 3, 2012, if such bond is not posted the preliminary injunction issued by Order dated July 27, 2012 [Docket No. 22] shall be dissolved.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 1, 2012.